(87 App. Div. 78.)

TAYLOR v. SMITH.

(Supreme Court, Appellate Division, Second Department. October 16, 1903.)

1. CARRIERS—PUBLIC CARTMEN—LIEN FOR CHARGES.

Where a public cartman, who was engaged in loading cars with goods for plaintiff, agreed to load a trap which had been driven to the car by plaintiff, he could have no lien on the trap because of the lack of any services rendered as a carrier with respect thereto.

2. SAME—EXPRESSMEN'S LIEN—ENFORCEMENT—POSSESSION.

A public cartman seeking a lien on property under the ordinances of New York City must convey it to the property clerk of the police department, or to a convenient storage warehouse, and not keep it in his own possession.

Appeal from Municipal Court of New York.

Action by Mary E. Taylor against William Smith. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, HIRSCHBERG, and HOOKER, JJ.

Henry Morris Haviland, for appellant.
Clinton B. Smith, for respondent.

HIRSCHBERG, J. The action is to recover the value of a trap belonging to the plaintiff, which the defendant is charged with con-

verting. The answer admits the possession and detention of the vehicle by the defendant, but alleges that it was delivered to him with other goods to be carried to a railroad and there loaded and shipped, and that the detention is to secure his charges for such services. It is not clear from the evidence what was the scope of the contract between the parties. The arrangement was made by the plaintiff's husband on her behalf, and he was not examined as a witness. The defendant testified upon the subject as follows:

"The agreement was to load his furniture and household effects and what goods came from Westbury on freight cars for a nominal sum, which was afterwards agreed upon as forty dollars. When we had completed—nearly completed—our contract, Mr. Taylor says to me, 'I will pay you when this furniture reaches Oscawana.' I said, 'I guess not.' I says, 'What have I to do with Oscawana? You are a stranger to me, when I am through loading these cars I want my money.' He said, 'I won't pay you.' I said, 'All right.' I finished loading as the agreement was, with the exception of the carriage. I went to the police station, being a licensed express, and stated my case. 'Well,' he says, 'you know as a licensed express, what to do.' (Objected to. Sustained. Last clause out.) Q. You refused to put them on the car because the amount agreed upon wasn't paid? A. He was a stranger to me. I didn't know him. I held the carriage, and informed the bureau of licenses at Long Island City what I had done, and this man refused to pay me the forty dollars, and I held that carriage until such time as he paid me."

It appears that the plaintiff had chartered two cars at College Point, where she resided, and that the defendant was employed to load her furniture on the cars for transportation to Oscawana. The furniture was loaded by him on the cars, but whether he, as an expressman, brought it to the cars, does not appear. It does clearly appear, however, that he did not take the trap in question to the cars, or perform any services as a carrier in respect to it. The trap was driven to the cars by the plaintiff's brother, and was left there, unloaded, at the defendant's request, he saying that he would take charge of it and put it on the cars. This was because at that time the defendant was engaged in loading the other articles upon the cars, and the plaintiff's brother could not get the trap near enough to the cars to load it himself. The plaintiff testified that the defendant told her, "The trap might stand in the yard outside of the car that night, because he didn't think they could put it in," to which she replied, quoting her language, "I said it was too nice a trap to stand outside, and it mustn't; and he said, 'I will take it down to my place and keep it through the night.'"

The defendant could have no lien excepting for services rendered as a carrier, and in that case he could have a lien only upon the articles with respect to which such services were rendered. If his contract was confined solely to loading the cars, it is doubtful if he could have a lien at all. But it is evident that, as to the trap, he agreed to do nothing but to place it on the cars either the day it was brought there or the next morning; and the case, therefore, is quite similar to that of Booker v. Reilly (decided by this court in June last), 82 N. Y. Supp. 1008, so far as regards the right to a lien. His possession of the trap may be regarded, perhaps, as lawful, until demand was made for its return to the plaintiff, but his refusal to comply with such demand un-

der the circumstances disclosed by the evidence rendered him liable as for a conversion.

It may be further noted that if the defendant sought to obtain a lien upon the property as a public cartman, under the ordinances of the city of New York, he should have conveyed it either to the property clerk of the police department, or to a convenient storage warehouse, and should not have kept it in his own possession. Browning v. Belford, 83 App. Div. 144, 82 N. Y. Supp. 489.

The judgment should be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.